## Case No. 4,084.

### DRIGGS v. RUSSELL et al.

[3 N. B. R. 161 (Quarto, 39):[1] 1 Chi. Leg. News, 353: 2 Am. Law T. 206; 1 Am. Law T. Rep. Bankr. 160.]

District Court, E. D. Michigan. June Term, 1869.

SEPARATE PROPERTY OF MARRIED WOMEN — EMPLOYMENT OF HUSBAND—HUSBAND'S CREDITORS.

1. Mrs. Russell. a married woman, carried on, managed, and controlled an iron foundry

[1] [Reprinted from 3 N. B. R. 161 (Quarto, 39) by permission.]

and other business interests in her own name, with funds loaned her by friends to whom she gave her own notes, with whom she advised as well as with her husband as to proposed investments. The husband, who was insolvent, was hired by the wife, and received a monthly compensation. Held, that the property used in the business and that purchased by her and standing in her name, was her individual property, and not liable to be taken to satisfy the claims of her husband's creditors.

2. Held, that a married woman may carry on business on her own account and for her own interest; that she may employ all needed labor, workmen, and agents, and that she may employ her own husband and pay him.

WITHEY, District Judge. This is an application by the assignee to have property, real and personal, held by Anna E. Russell, turned over to the assignee in bankruptcy for the benefit of George B. Russell's creditors, and is based on the claim that the property in question has been acquired in the name of Mrs. Russell. but for her husband's benefit. If the claim is supported by the proofs, then the order to transfer the property to the assignee in bankruptcy should be made; otherwise it should be denied. We have not time to enter as fully into a discussion of the merits of the question as its importance demands. but we have not failed to examine the facts, and should be glad, if our time permitted, to give in full the views which have led to our conclusion. We shall attempt, therefore, little more than a statement of the result of our examinations.

In all Mrs. Russell's purchases of property, there is no evidence that her husband furnished one dollar of the purchase-money. In her business operations in carrying on the iron foundry and other business interests, there is no evidence that her husband had any control whatever, furnished any capital, or dictated in the slightest manner. Mrs. Russell had friends who loaned her money. She advised with friends as to proposed investments, as to business she began and carried on, and she also advised with her husband in reference to these subjects, as she had a right to do. She gave her individual notes for moneys loaned. She pledged property which she had bought, to secure payment. Her husband's name does not appear in any of these transactions. Mrs. Russell began without means; her husband was a bankrupt without credit, hopelessly insolvent. Her credit was better than his, because she was not involved in debt, and he was. There is no presumption, therefore, that his credit or his means had any influence in promoting her credit or her acquisition of the property or any part of it. But Russell did work a portion of the time for his wife, and received from her a monthly compensation. How does this fact affect the right of property? How does it show that her acquisitions were for his benefit? Not in the slightest, if a married woman may carry on business on her own account and for her own interest. If she may

do this, she may employ all needed labor, workmen, and agents. If she may hire the services of any one at all, she may employ her husband and pay him. That the husband is primarily bound to support his family, may be conceded; but suppose he cannot, and suppose the wife can, she may do so. But there is nothing in the case to show that Russell did not, through his own earnings, support his family. If it should be established that his earnings went into her property, then he would own an interest in the property. But this fact does not appear. The petitioner comes and asserts that Russell, and not Mrs. Russell, is the person in whose real interest the property was acquired, that the wife was but a cover, holding it for the husband. The petitioner is bound to establish what he asserts by proofs, before he can ask the court to find that this claim is correct. It is probable the petitioner and his learned counsel commenced these proceedings upon such information as entirely justified not only the claim set up, but afforded great assurance of success. The proofs must, in a great measure, come from Mrs. Russell and Mr. Russell. They were called and examined, and, we think, exhibit great candor, frankness, and truthfulness. The facts taken altogether, as we think, fail to show any interest whatever, in the husband, in any respect, to any of the property in question.

It makes no difference that Russell had failed; it is at most a circumstance which is to be considered in weighing the proofs if, because he could not buy and sell and carry on business, he was using his wife's name as a cover for doing what in his own name he could not successfully do. But, as a circumstance or fact, it amounts to very little in view of the proofs. It is asked if credit would have been given to Mrs. Russell had it not been for the confidence placed by others in her husband's business ability? We can only reply that we think if Russell's business reputation was one of the main inducements for giving his wife credit and loaning her money, such fact ought not to be allowed as affecting her rights to property acquired by means of such credit. She had a right to all the advantage which would or did flow to her from her own or her husband's business tact and foresight, so long as his means, services, and earnings, did not enter into her business. Mrs. Russell stated that her husband spent more time than she did in her business, but when this statement is considered with reference to all that she states, and the other proofs, it is without any significance. Russell was employed, that is, a portion of the time, to and about Mrs. Russell's business, but she paid him wages regularly, as she paid other employees. Mrs. Russell managed and controlled everything. She was conversant with all her business, and her testimony exhibits business qualities quite equal to those exhibited by successful business men. In Michigan, the wife may acquire, hold, and own property in her own right, and she may carry on business in her own name. Hence the presumptions are all in her favor on the question of the ownership of this property. The legal title is indisputably in her. She has possession. The proofs do not overcome these presumptions. We cannot take her property and hand it over to her husband's creditors. We think the authorities cited by counsel sustain us in our conclusions. It may be said we have taken a one-sided view of the facts of this case, failing to discuss fully the proofs which tend to show a different result. We admit this—but our time has not been sufficient to enter upon as full a discussion as we have desired. We have not failed, however, to consider both sides in our investigations, but a desire to dispose of the case now is the excuse for the partial discussion we make in announcing the result. The application is denied.